**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 6, 2015[*]
Decided November 9, 2015

**Before**

WILLIAM J. BAUER, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 14-2298

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. GLENN McCANDLISS, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 03 C 807 |
| ORAL SEKENDUR, *Defendant-Appellant*. | James F. Holderman, *Judge*. |

**O R D E R**

In 2007 the district court entered a judgment against Oral Sekendur and his brother under the False Claims Act, *see* 31 U.S.C. § 3729(a), after finding that the two men had induced the Social Security Administration to pay disability benefits to the brother even though he was not impaired. The brothers were deemed jointly and severally liable for over $1.5 million in damages. In supplementary enforcement proceedings, the district court, relying on the Federal Debt Collection Procedures Act, 28 U.S.C. §§ 3001 to

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

3308, authorized the government to garnish funds from retirement accounts that Sekendur says are exempt. This appeal followed. We uphold the garnishment.

In the same year that the judgment was entered, the United States served a citation of assets on Smith Barney (which, to simplify, we will call Morgan Stanley in light of later mergers). Morgan Stanley responded that Sekendur had two Keogh accounts, a type of retirement account for persons who are self-employed. The government did not take further action, but then in 2012 the relator (the underlying action having been filed as a qui tam, *see* 31 U.S.C. § 3730(b)) asked the district court to conduct a hearing to determine if the funds in the accounts were exempt from collection. The district court referred the matter to a magistrate judge, *see* 28 U.S.C. § 636(b)(1)(B), who allowed the United States to revive the supplementary proceeding that was commenced in 2007 by serving the citation of assets. The government then moved under the FDCPA for an order of garnishment. *See* 28 U.S.C. § 3205. Sekendur responded that the Keogh accounts were exempt from garnishment because the FDCPA permits the debtor to shield property that, under state law, is exempt from collection. *See* 28 U.S.C. § 3014(a)(2)(A). Illinois provides such exemptions, including for retirement plans, 735 ILCS 5/12-1006(a), (b)(1), and $4,000 of personal property, *id*. § 5/12-1001(b).

In 2014, after allowing discovery, the magistrate judge conducted an evidentiary hearing. In a Report and Recommendation, the magistrate judge concluded that funds in Keogh accounts are exempt only to the extent those funds represent contributions within the annual limit in the Internal Revenue Code, which was 25% of self-employment income. The magistrate judge reasoned that Sekendur bore the burden of establishing that the account balances resulted from permissible contributions. Yet Sekendur produced very few account records, and, according to the magistrate judge, his testimony attributing the money to self-employment "lacked any sense of credibility." As a result, the magistrate judge recommended that the government be permitted to garnish 76% of the total funds in the two accounts, less the $4,000 exemption for personal property (in all, $149,570).

Sekendur objected to the Report and Recommendation but did not obtain a transcript of the evidentiary hearing. He argued that the district court lacked subject-matter jurisdiction to order garnishment because, according to Sekendur, the government had waited too long before acting on the information received from Morgan Stanley in 2007. Sekendur added that the magistrate judge should have placed the burden on the United States to prove that the accounts are not exempt. He also protested that he had not been allowed to cross-examine the government's lawyer or its

witness, a paralegal who summarized documents obtained in discovery. But Sekendur did not object to the magistrate judge's credibility assessment, except to say that the proposed finding "indicates that the court ignored documents" he introduced. The district court overruled Sekendur's objections, adopted the Report and Recommendation, and ordered Morgan Stanley to turn over $149,570. (The parties do not say whether Morgan Stanley has complied.) The district court noted that, as to Sekendur's objections about the evidentiary hearing, he had not provided a transcript.

On appeal Sekendur first renews his contention that the citation to discover assets had gone stale and, thus, deprived the district court of subject-matter jurisdiction. In the absence of a more specific federal provision, the FDCPA provides the exclusive civil procedures for the United States to collect a judgment. *See* 28 U.S.C. § 3001; *United States v. Sheth*, 759 F.3d 711, 716 (7th Cir. 2014). The Federal Rules of Civil Procedure apply to proceedings under the FDCPA, *see* 28 U.S.C. § 3003(f), and Rule 69 allows judgment creditors to use state supplementary proceedings to collect, *see United States v. Gianelli*, 543 F.3d 1178, 1182 (9th Cir. 2008). When Morgan Stanley was served with the citation to discover assets, the government was relying on Rule 69(a) and Illinois Supreme Court Rule 277. And the latter rule provides, as a general matter, that a supplementary proceeding terminates automatically after six months. *See* ILL. SUP. CT. R. 277(f). On Sekendur's view, then, the government's years of inaction after learning about his Keogh accounts were fatal.

This argument fails for two reasons. First, the Illinois courts do not interpret Rule 277(f) so rigidly; a court may extend a supplementary proceeding beyond six months, so long as extensions do not constitute harassment of a party. *See Levine v. Pascal*, 236 N.E.2d 425, 431 (Ill. App. Ct. 1968) ("'[U]nswerving obedience' is not demanded where no material harm is done to any litigant."); *see also Sheth*, 759 F.3d at 717 (noting that proceedings under Rule 277 may be extended "as justice may require"). Second, and more importantly, we have said that Rule 277 concerns only the mechanics of collection and does not affect the jurisdiction of the federal courts. *Laborers' Pension Fund v. Pavement Maint., Inc.*, 542 F.3d 189, 193–94 (7th Cir. 2008). The district court had subject-matter jurisdiction to order garnishment of the Keogh accounts, not because of Rule 277 or some other state law, but because the court had ancillary jurisdiction to enforce its underlying judgment, as well as original jurisdiction over the government's effort to collect a debt on its own behalf. *See* 28 U.S.C. § 1345; *United States v. Vitek Supply Corp.*, 151 F.3d 580, 585–86 (7th Cir. 1998).

Sekendur also contends that it was error to assign him the burden of establishing that his Keogh accounts were exempt from collection. But the district court properly concluded that under the FDCPA, when either party requests a hearing on the applicability of an exemption, "[u]nless it is reasonably evident that the exemption applies, the debtor shall bear the burden of persuasion." 28 U.S.C. § 3014(b)(2). Sekendur's entitlement to an exemption for the Keogh accounts was not "reasonably evident" because, under the Illinois statute, exempting a "retirement plan" requires more than a showing that funds are held in an account earmarked for retirement. The plan in question must be "intended in good faith to qualify as a retirement plan under applicable provisions of the Internal Revenue Code of 1986, as now or hereafter amended." 735 ILCS 5/12-1006. The dispute in this case centered on whether Sekendur had violated the contribution limit for Keogh accounts, a question directly related to his assertion that the Morgan Stanley accounts qualified as retirement accounts.

In the alternative, Sekendur contends that, if he did bear the burden of persuasion, he met that burden by submitting account statements showing a few legitimate contributions stretching back to 1991. Documents obtained in discovery, mostly year-end account statements that shed little light on what happened in between, evidence that Sekendur had opened one of the Keogh accounts in 1991 and the other in 2005. But because the second account was funded entirely by a transfer from the first, the parties focused on the contributions made to the first account. That account was opened with $8,300 but, for reasons not apparent from the scant records, had grown to $53,677 by the end of the same year. No further contribution is documented until $5,600 was added in 1997, yet by the end of that year the account balance was $94,520. The last verifiable contribution of self-employment income was made in 2000; the total of those contributions was $27,500 and the balance at the end of that year, $124,654. The difference, the government insisted, could not be attributed to earnings alone. After 2000, though, no additional contributions were made (from any source), but earnings increased the total in the two accounts to $202,067 by the time of the evidentiary hearing in December 2013.

Before and after the evidentiary hearing, Sekendur repeatedly asserted that the unexplained difference came, not exclusively from earnings, but from legitimate contributions of self-employment income over the course of his working years. In various written submissions he ventured to explain how in 1991—*theoretically*—he could have rolled over other legitimate retirement funds into the first Keogh account to reach the year-end balance that is more than six times the single, verifiable contribution of $8,300 made when the account was opened. He also proposed that, if he did make excess

contributions in any year, those contributions would have been correctable through carry-forward and carry-back provisions in the tax code. Finally, Sekendur submitted an unfiled 1985 tax return with a transmittal letter from his accountant instructing him to make a $12,240 Keogh contribution before April 15, 1986.

Yet in his written submissions Sekendur did not say that he actually rolled over other retirement accounts, or that he carried forward or back an excess contribution, or even that he followed his accountant's advice to make a Keogh contribution in 1986. His hypothetical scenarios are irrelevant, and nothing in the record causes us to question the district court's determination that Sekendur did not meet his burden of demonstrating that the funds in his two Keogh accounts represent only permissible earnings and associated earnings. Indeed, Sekendur has not given us a transcript of the evidentiary hearing, which would include his own testimony that the magistrate judge declared to be unworthy of belief. The missing transcript is reason enough to rule against Sekendur (and prevents us from addressing his contention that the magistrate judge improperly curtailed cross-examination of the government's witness). *See Morisch v. United States*, 656 F.3d 522, 529 (7th Cir. 2011); *RK Co. v. See*, 622 F.3d 846, 852–53 (7th Cir. 2010). Anyway, Sekendur waived objection to the adverse credibility finding by not specifically objecting to the Report and Recommendation on that ground. *See* 28 U.S.C. § 636(b)(1); *Flint v. City of Belvidere*, 791 F.3d 764, 769 (7th Cir. 2015).

Accordingly, we uphold the district court's garnishment order. We note that Sekendur devotes a significant portion of his brief objecting to the filing restriction this court entered against him as a sanction in December 2005. *See Support Sys, Int'l, Inc. v. Mack*, 45 F.3d 185 (1995). As we have explained already in our order dated July 23, 2014, this appeal is limited to review of the garnishment order and related proceedings. Sekendur was permitted to participate fully in those proceedings despite his (still unpaid) sanction. We have considered the other contentions he makes in his brief, and we conclude that none merits discussion.

AFFIRMED.